<pre>
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF CALIFORNIA

 3   DANIEL GONZALEZ,              :   Case No. 2:15-cv-01997-MCE-DB

 4        Plaintiff,               :   Sacramento, California
                                       Thursday, June 7, 2018
 5             v.                  :   10:18 a.m.

 6   VETERANS ADMINISTRATION,      :   DEFENDANTS' MOTION FOR
     ET AL.,                           SUMMARY JUDGMENT [49]
 7                                 :

          Defendants.
 8   : : : : : : : : : : : : : : : :

 9

                       TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE DEBORAH BARNES,
                  UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff          DANIEL GONZALEZ, PRO SE
     (via telephone):           7125 Calvin Drive
14                              Citrus Heights, CA  95621

15   For the Defendants:        United States Attorney's Office
                                BY:  GREGORY T. BRODERICK, AUSA
16                              501 I Street, Suite 10-100
                                Sacramento, CA  95814

17

18

19   Court Recorder:            COURT PERSONNEL

20

21   Transcript prepared by:    JANICE RUSSELL TRANSCRIPTS
                                1418 Red Fox Circle
     21                         Severance, CO  80550
                                (757) 422-9089
22                              trussell31@tdsmail.com

23

24   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
25
</pre>

1      SACRAMENTO, CALIFORNIA, THURSDAY, JUNE 7, 2018, 10:18 A.M.

2              THE COURTROOM DEPUTY:  Calling Civil Case 15-01997-

3    MCE-DB, Daniel Gonzalez versus United States of America.  Your

4    Honor, this matter is on calendar for defendants' motion for

5    summary judgment.

6              THE COURT:  Do we have Mr. Gonzalez here in the

7    courtroom?  On the phone, great.  All right.

8              MR. GONZALEZ:  Your Honor?

9              THE COURT:  Yes.

10              MR. GONZALEZ:  Good morning.  Daniel Gonzalez.

11              THE COURT:  Good morning, Mr. Gonzalez.  How are you

12    today?

13              MR. GONZALEZ:  Well, recovering, Your Honor, from

14    surgery and unfortunately, didn't successfully correct my

15    problem.  So I'm, I'm, I'm, unfortunately, not able to be there

16    personally.

17              THE COURT:  Telephonic conference is, telephonic

18    appearance is just fine.  And good morning to you, sir.

19              Counsel?

20              MR. BRODERICK:  And good morning, Your Honor.  Greg --

21              MR. GONZALEZ:  Thank you.

22              THE COURT:  Greg Broderick for the United States.

23              THE COURT:  Good morning.

24              All right.  We're here today for the defendants'

25    motion for summary judgment and as the Court's reviewed the

1  file, it appears that this sort of, the gravamen of this is

2  compliance with Rule 26 in terms of expert disclosure and the

3  adequacy of that disclosure.

4        Is that an accurate summation of that, Mr. Broderick?

5        MR. BRODERICK:  I, I think that's the underlying

6  issue.  From our perspective, he -- the -- the -- the core

7  issue is he doesn't have the evidence.  His failure to comply

8  with Rule 26 is how he got there, but the substantive problem

9  is he doesn't have any, the required medical expert opinion to

10 say that --

11       THE COURT:  All right.

12       MR. BRODERICK:  -- our doctors violated the standard

13 of care.

14       THE COURT:  All right.  It seems as if there's at

15 least the beginnings of an attempt to comply with that.  The

16 Court did note that in the, in the record.

17       I am going to take this under submission as well and

18 issue a written order so everyone is very clear about what the

19 Court's direction is, but I am inclined to grant the

20 plaintiff's request to modify the scheduling order and deny the

21 defendants' motion for summary judgment without prejudice.

22       With that said, Mr. Broderick, do you wish to address

23 the Court at this time?

24       MR. BRODERICK:  I, I do.  A, a couple of things on

25 that.

1          This is Judge England's scheduling order so I'm not, I

2   think based on the, the law in this District I don't think this

3   Court can -- you can do findings and recommendations for that,

4   but I don't believe his scheduling order in this case gave the

5   authority to the -- to -- to this Court to, to change that

6   scheduling order.

7          So he, he would have to do that and we, we'll probably

8   object to that.  And, and let me tell you why.

9          THE COURT:  That's certainly your entitlement, sir.

10         MR. BRODERICK:  Sure.  And let me explain why in an

11  attempt to talk you out of doing it, in the first place.

12         Mr. Gonzalez, we came in here at the initial

13  scheduling conference and we asked for a schedule.  It's a

14  medical malpractice case.  Mr. Gonzalez doesn't have an

15  attorney.  His complaint is a little difficult to -- to --

16         THE COURT:  Not unusual for an individual representing

17  him or herself.

18         MR. BRODERICK:  That's right.

19         So we asked the Court for and got a schedule where

20  Mr. Gonzalez would have to disclose his experts first so that

21  we could understand what he was claiming the problem was, then

22  we could disclose our expert, second, and then everybody could

23  do rebuttal, third.  Mr. Gonzalez opposed that.  This Court

24  approved the, the schedule that we proposed for that.

25         And, and the problem, the prejudice that this causes

1   us, if the schedule's going to be kicked out, is, is sort of

2   multifaceted.  One is we already agreed to give Mr. Gonzalez 90

3   more days on, in a stipulation that, that the Court approved

4   to, to do this from, from the original December date to March

5   22.  So that, that's Issue 1, is he's already had an extension.

6        Issue 2, more of like how it impacts us, is

7   Mr. Gonzalez -- we, we've now disclosed our experts.  We had to

8   go through that exercise of guessing, which was an exercise

9   that we won the right not to have to do in this court.  We've

10  spent the money on it.  We spent the time on it.  Our expert is

11  now out there on it.  If we get something from Mr. Gonzalez,

12  we're going to -- I think we're going to have -- so the

13  deadline for all the expert stuff is over.  His time, our time,

14  rebuttal time is all over.  If we get something from

15  Mr. Gonzalez, it seems likely that we're going to need more

16  time to have our expert respond to that.  Discovery in this

17  case closes a week from today.  So it seems likely that we'll

18  need more time to do discovery.  The law and motion deadline in

19  this case is August 3rd.  That's going to go away and, and

20  we're going to have to get --

21       So, so we're looking at -- I did the rough math on

22  what it would, would take and we're looking at probably about

23  five months of, of an extension.

24       THE COURT:  And how does a five-month extension

25  specifically prejudice the Government with all of its

1    resources?

2            MR. BRODERICK:  Right.

3            So -- so -- so, twofold.

4            THE COURT:  And lawyers?

5            MR. BRODERICK:  I -- I always -- I always chuckle when

6    people say the, the vast resources of the United States

7    'cause --

8            THE COURT:  You're talking to a former government

9    lawyer, sir.

10           MR. BRODERICK:  Exactly right.

11           THE COURT:  Yes.  So I, I'm very well aware --

12           MR. BRODERICK:  For us --

13           THE COURT:  -- of the resources the Government can

14   bring to bear to a case.

15           MR. BRODERICK:  Well, I don't know about the State

16   Attorney General's Office.  For us, I, I'm it.  I'm, I'm the

17   vast resources.

18           THE COURT:  You're the only lawyer over at the U. S.

19   Attorney's Office?

20           MR. BRODERICK:  No, but I'm the only lawyer working on

21   this.  And so -- so -- so here's the prejudice to us.

22           First, I, I think the prejudice that's already done

23   that can't be undone is that we've already disclosed our

24   experts.

25           THE COURT:  You've already de -- de -- I hate to

1   interrupt you, but I'm gonna.  You've already detailed a way

2   to, to address that prejudice by having additional time to file

3   rebuttal information, given the topsy-turvy, as it were,

4   disclosure of experts.  So you, yourself, have already

5   presented a solution to that prejudice.

6          But go ahead.

7          MR. BRODERICK:  Well, I'm not sure it solves the

8   prejudice, though, because we, we, we asked for that schedule

9   for two reasons.  It would certainly be the, the minimum thing

10  that we would need to, to, to mitigate some of that prejudice,

11  but we already did the thing that we didn't want to have to do

12  and we already spent the money on it and we already spent the

13  time on it and we already had to guess.  And the Court adopted

14  our schedule, which we don't litigate this in every case, but

15  our Court adopt, this Court adopted that schedule and put in

16  big, old capital letters, you know, that the schedule would be

17  strictly enforced.  It was important to read and --

18          THE COURT:  I understand that --

19          MR. BRODERICK:  -- and all of that.

20          THE COURT:  -- sir.

21          MR. BRODERICK:  So -- so that's -- so Issue 1 is we're

22  already out the, the money and the time and the effort on that.

23          THE COURT:  How does prejudice you substantively in

24  the case and put you -- how does that put you substantively at,

25  at a disadvantage?  I still haven't heard the answer to that.

1          MR. BRODERICK:  So -- so --

2          THE COURT:  I've heard about money and time --

3          MR. BRODERICK:  Right.

4          THE COURT:  -- but I've not heard about any

5    substantive disadvantage that you've incurred.

6          MR. BRODERICK:  So our -- I mean, we litigated it for

7    substantive reasons and we, and our expert has had to guess at

8    what the theories are --

9          THE COURT:  I understand.

10         MR. BRODERICK:  -- and lay them out, which he, which

11   we shouldn't have to do that.  It's, it's Mr. Gonzalez -- I'll

12   get there in a sec -- but it's Mr. Gonzalez's burden to say,

13   "Here's what you did wrong," and then for us to respond to

14   that.

15         So for our expert to have to go and, and do that and

16   guess in the blind, I think creates an unfair advantage where

17   we've had to guess the, the problem first and propose a

18   solution for it.  That -- that --

19         THE COURT:  Didn't your ex -- let me stop you.

20         Didn't your experts have access to all of the internal

21   documents that the Government has access to regarding this

22   case?

23         MR. BRODERICK:  Well, it's the same, it's all the same

24   documents Mr. Gonzalez has that we produced to him.

25         THE COURT:  Okay.

```
 1              MR. BRODERICK:  So there's not anything else, but --
 2              THE COURT:  All right.
 3              MR. BRODERICK:  -- right.  We gave them --
 4              THE COURT:  Just making sure they had access to
 5    everything.
 6              Sir, I, I appreciate your arguments.  I'm going to ask
 7    you to kind of wrap up this --
 8              MR. BRODERICK:  Right.
 9              THE COURT:  -- angle of it.
10              MR. BRODERICK:  Well -- well -- so first is we, we
11    already -- that's --
12              THE COURT:  Spent time and money.
13              MR. BRODERICK:  That's first.  Spent time and money
14    and our expert has already had to go first.
15              Second is we -- these doctors at the VA have been
16    under the cloud of this thing.  It's their position they didn't
17    do anything wrong.  Of course, it's Mr. Gonzalez's position
18    that they did.  We set a schedule, really, in what should be a
19    fairly easy-to-do kind of medical malpractice case.  That was,
20    that was six months out to expert reports because it's all
21    concluded and it's all over and it all happened ten years ago.
22    Because they don't want to be under the cloud of this not only
23    the, the money and the time that they have to spend and
24    distraction from treating the veterans, but, but the amount of,
25    of, of sort of stigma that sits on top of them.
```

1          So we set a --

2          THE COURT:  Can I ask you a question?

3          MR. BRODERICK:  Yes, ma'am.

4          THE COURT:  Are these the only doctors that have ever,

5     at the VA, that have had to suffer the filing of a malpractice

6     suit?

7          MR. BRODERICK:  No, but I --

8          THE COURT:  I mean --

9          MR. BRODERICK:  -- can tell you --

10         THE COURT:  -- it can't be that big a cloud.  I

11    mean --

12         MR. BRODERICK:  It's a --

13         THE COURT:  -- lawyers get sued all the time and I

14    assume doctors get sued with malpractice all the time.  I'm not

15    trying to take away from their angst and pain, but, I mean,

16    this cannot be a unique or unusual situation.

17         MR. BRODERICK:  It, it's not unique.  I think it is,

18    it is unusual in the course of the, the normal treatment --

19         THE COURT:  Uh-huh (indicating an affirmative

20    response).

21         MR. BRODERICK:  -- that they do.  They treat thousands

22    and thousands of people.  I can tell you for my two doctors I

23    believe this is their first time getting sued.

24         THE COURT:  Uh-huh (indicating an affirmative

25    response).

1           MR. BRODERICK:  I know it's true for one of them and

2    I'm, and I think it's true for --

3           THE COURT:  Uh-huh (indicating an affirmative

4    response).

5           MR. BRODERICK:  -- for Dr. Siegal, who's the Chief of

6    Medicine at the VA.

7           THE COURT:  Are they not covered by some sort of

8    institutional malpractice insurance?

9           MR. BRODERICK:  Well, we're the institutional

10   malpractice --

11          THE COURT:  There you go.

12          MR. BRODERICK:  -- insurance.

13          But -- but -- but -- but the cloud of having, of

14   having been accused of this --

15          THE COURT:  Uh-huh (indicating an affirmative

16   response).

17          MR. BRODERICK:  -- and having been -- so anyway, we

18   set a six-month schedule so they would, so we could find out

19   what they're supposed to have done wrong.  Mr. Gonzalez came in

20   in December.  He said he had medical problems.  We said fine.

21   We gave him a three-month extension after some procedural

22   stuff.  That's March 22.

23          Now we're, we're out at June 7th, which is almost, I

24   don't know, some 10 or 11 weeks after March 22.

25          THE COURT:  Part of those two weeks is the Court's

1  fault, sir.  So you can take that into consideration as well.

2          MR. BRODERICK:  Well, that's true for this motion, but

3  it's not true for Mr. Gonzalez.  He, he did whatever things he

4  said he was going to need to do, were done on April 27th.  He

5  could have disclosed a rebuttal expert on May 17th.  He didn't

6  do that.  He could have disclosed something for today.  He

7  didn't do that.

8          So he's had, he's had double the time that we

9  originally had to do this and this drags on and on and on and,

10  and, you know, aside from all the normal stuff, hey, we have a

11  lot of cases to do and so on and so forth, it, it's important

12  to us to get these things resolved, particularly in what we

13  view is a meritless claim here, but, but I gather he views it

14  differently.  But, but it's important for us to go out there

15  and to get these things resolved and to, and to go to the next

16  thing.

17          So what I'm looking at here on my schedule is 60 -- so

18  we originally had about 60 days in between the time he would

19  give his report, whatever that looks like, and we would have to

20  do a rebuttal report.  So I think we'd need 60 days for that.

21  Then we'd probably need at least 30 days to depose each other's

22  experts.  This is on top of, this is like from whenever he

23  serves a report.  Then we'd need 30 more days, I would gather,

24  or two, two weeks to four weeks to file a motion for summary

25  judgment after that and, you know, another whatever the Court's

1   schedule is.  But usually, about 28, 35 days to get that

2   summary judgment on calendar.

3           So we're talking about a case that was supposed to be,

4   you know, he was supposed to have done this in December.  We

5   gave him more time for March.  He's supposed to have done it

6   March 22nd.  We're 10 or 11 weeks past March 22nd.  He hasn't

7   done it.  He said that's 'cause he needed the expert

8   depositions.  He took those April 27th.  There's now been more

9   time since he claims he was originally supposed to have gotten

10  the depo and his original due date from when he actually got

11  the depo and now and he still hasn't done anything.

12          So, you know, it -- it -- I --

13          THE COURT:  I understand you object.

14          MR. BRODERICK:  We, we do -- and I understand where

15  the Court's coming from on this.

16          THE COURT:  I understand you object, sir.

17          MR. BRODERICK:  I --

18          THE COURT:  Did you have anything else to add to what

19  you've already stated?

20          MR. BRODERICK:  No, other than in, on top of all that,

21  the findings and recommendations that you're going to do that

22  we'll probably object to, we'll, we're going to be doing this

23  until next year and these things have --

24          THE COURT:  Well, sir, I'm sorry.

25          MR. BRODERICK:  -- to end.

```
1           THE COURT:  That's your job.

2           MR. BRODERICK:  I understand, but --

3           THE COURT:  I understand your -- your -- your -- I can

4    see your passion.  I can see your angst.  I can see your

5    concern.  I get it, but it is what it is and I'm going to hear

6    what Mr. Gonzalez has to say.  And I've already said I'm going

7    to take this under submission.  I will consider your comments.

8           MR. BRODERICK:  Thank you.

9           THE COURT:  But frankly, other than the additional

10   time, the -- and unde, and, and undefined cloud over the

11   doctors of which I'm still not, I mean, I, being, being sued as

12   a defend, as a defendant is certainly stressful.  I still

13   haven't heard how it's specifically impacted their practice or

14   their personal lives.  I understand what you're saying.  It's

15   important to the Government to resolve these issues quickly.

16   What I have not heard and I -- and I -- I, I think at this

17   point I don't hear coming from you -- so please don't repeat

18   what you've said -- as to specifically what prejudice this puts

19   the Government under in terms of being able to defend, which

20   you have already characterized as a meritless claim --

21          MR. BRODERICK:  I -- I --

22          THE COURT:  -- that is over ten years old.  That

23   certainly puts you in the driver's seat in terms of, of

24   defending a claim.

25          So with that said, I'm going to turn to Mr. Gonzalez
```

1    and hear what he has to say.  I'll give you one last bite of

2    the apple and I'm going to encourage you, sir --

3              MR. BRODERICK:  I won't repeat myself.

4              THE COURT:  -- to keep your comments short, all right?

5    Why don't you have a seat.

6              MR. BRODERICK:  Thank you.

7              THE COURT:  Mr. Gonzalez, you've heard Mr. Broderick's

8    statements and I have to say Mr. Broderick's statements do not

9    land on deaf ears with this Court.

10             What do you have, what do you have to tell the Court

11   about why the compliance with Rule 26 has been late and why the

12   little bit of compliance was not adequate?

13             MR. GONZALEZ:  Thank you, Your Honor.

14             First, I'd like to say I have been as candid as I have

15   been possibly with the Court in giving the Court the documents,

16   the exhibits, the communications I've had with Mr. Broderick.

17   I've had -- I believe my declaration that I filed or had

18   prepared and had someone file for me on the ex parte on his

19   reply, I believe my Paragraphs 2, 3, and 4 explain the --

20             THE COURT:  Mr. --

21             MR. GONZALEZ:  -- context --

22             THE COURT:  Mr. Gonzalez, I'm going to --

23   Mr. Gonzalez, I'm going to stop you.  I -- I --

24             MR. GONZALEZ:  Yeah.

25             THE COURT:  The Court is aware of what you have filed

1   with the court, okay?  So --

2          MR. GONZALEZ:  Okay.

3          THE COURT:  Okay.  I'm just going to save you the

4   energy of having to repeat that.

5          What I am asking you is, notwithstanding what you

6   filed with the court, you do have an obligation to provide

7   information and disclosure of your expert witness in a complete

8   and timely fashion with the Government and what I'm not hearing

9   is why you haven't done that.

10          MR. GONZALEZ:  Well, Your Honor, I gave, as I

11   explained, I gave file copies of my designations since October

12   of 2017.  I've noted Dr. Bash fully to Mr. Broderick.  We

13   discussed it at the meet and confer in December.  He knew that

14   I would not take a deposition at the VA because of the trauma.

15          THE COURT:  Trauma to whom?

16          MR. GONZALEZ:  And yet --

17          THE COURT:  Stop, Mr. Gonzalez.  The trauma to you?

18          MR. GONZALEZ:  Yes.  You know, you know, we're talking

19   about the VA doctors.  You know, this is not -- I, I, I totally

20   agree with Your Honor in, in understanding that I'm the one

21   who's getting old here.  I'm the one --

22          THE COURT:  I hate to tell you --

23          MR. GONZALEZ:  -- who's not --

24          THE COURT:  -- we're all getting old here.

25          MR. GONZALEZ:  -- (indiscernible) 15 or 20 or a

1   hundred years from now.  The U.S. will be.  I don't see any

2   prejudice to just amending the schedule the way Your Honor sees

3   it should be just.  If, if we're going to deal with deciding

4   this on the merits, if Mr. Broderick says I don't have facts,

5   well, allow me the opportunity to present those facts.  I will

6   let the Court decide is there, you know, that's what they tell

7   me.

8            If, if we amend the schedule and every expert gets

9   deposed or they're -- Mr., Dr. Bash doesn't want to give a, a

10  report.  He was, he was being careful not to give a report that

11  would be impeachable --

12           THE COURT:  Okay.

13           MR. GONZALEZ:  -- unlike the defendant who, who said I

14  was a sexual child molester.

15           THE COURT:  Okay.

16           MR. GONZALEZ:  I'm going to say I -- I -- I'm going to

17  say very strongly what I said in my declarations was true.

18           THE COURT:  Okay.

19           All right, Mr. --

20           MR. GONZALEZ:  And for this -- for my -- for my

21  Government after I served to have them say what they said and

22  to use that as a medical malpractice defense, I went to them

23  for help and for them --

24           THE COURT:  I, I under -- Mr. --

25           MR. GONZALEZ:  -- to term --

1              THE COURT:  Mr. Gonzalez, I understand --

2              MR. GONZALEZ:  Okay.

3              THE COURT:  -- and I, I can hear the, I can hear that

4   you're upset and I can hear and, from you today and this

5   morning and in your pleadings that this is a matter that is

6   deep to your heart and that you feel very passionate about and

7   had caused you a great deal of angst.  And, and I can hear it

8   in your voice and the Court is not unsympathetic to that.

9   And --

10             MR. GONZALEZ:  I'm sorry.

11             THE COURT:  It's okay.  I understand.  This is hard

12  for you and you're, you know, I don't know if it's a good or

13  bad thing you're not a lawyer, but here, you know, you're not,

14  you are representing yourself and I think that is a difficult

15  task for anyone.

16             MR. GONZALEZ:  Thank you.

17             THE COURT:  And it's, it's hard for lawyers sometimes

18  to be in court, let along people who have not had the benefit

19  of the training and experience that lawyers bring to bear to a

20  case.  So the Court is, is sympathetic to that as well.

21             What I am -- Mr. Broderick and I may have a difference

22  of opinion as to whether F&Rs can issue or the Court can, can

23  modify its own order.  Mr. Broderick and I may disagree on that

24  as well, but --

25             Did we lose him?

1          Mr. Gonzalez, are you there?

2          MR. GONZALEZ:  No, I'm here, Your Honor.

3          THE COURT:  Oh, okay.  I thought I heard a beep on the

4     phone.

5          So I am going to take this matter under submission.

6     It sounds to me like, Mr. Gonzalez, you've submitted your

7     position fully in the papers and there's nothing more that you

8     really can add verbally here today.

9          Assuming that if the Court does modify the schedule

10     and assuming you survive any objections or motions for

11     reconsideration that the Government feels the need to file that

12     would extend the process out even further -- that is the

13     Government's right to do that -- but if you survive all of

14     that, what I am really going to suggest to you is that you have

15     to become as familiar with the Federal Rules of Civil Procedure

16     just as much as Mr. Broderick.  As you heard, he is a, he's

17     been in this courthouse a lot.  He is experienced and you need

18     to be as familiar with the Rules as he is, which means you've

19     got to read Rule 26 carefully.

20          You also need to take advantage, if you can, of any

21     guides that lawyers routinely use.  There's a thing called The

22     Rutter Group for Federal Civil, Civil Procedure before a trial

23     for, in federal court.  As a practitioner, I used it

24     religiously.  We called it the Federal Bible, as it were.  You

25     may be able to access a copy of that in one of the law school

1   libraries.  It's, or here, even, in the library in this

2   courthouse and it can give you additional information on what

3   you need to do to ensure that your submissions to Mr. Broderick

4   in terms of discovery and expert disclosure are legally

5   adequate.  And that way, you turn the fight into the merits of

6   the case, not to the procedure of the case.

7         So those -- that's -- those are my wizen words, if you

8   get to that point.  And Mr. Broderick and the Government,

9   should they challenge any orders or findings and recommendation

10  that this Court issue that may not please the Government, that

11  way, at least will try to give you some advice, should you get

12  to that point.

13        There is one other thing I wish to address to the

14  parties.  So I think I've heard enough at this point to make

15  it --

16        Yes, Mr. Broderick?

17        MR. BRODERICK:  Can I, can I give you a case cite just

18  so you can know where we're coming from on the, on the findings

19  and recommendations part of it?  It's UMG Recordings, 2006 WL

20  2034689, at Page 3, and Judge Drozd said in that case the

21  Magistrate Judge cannot modify the District Court's scheduling

22  order.  So that's --

23        THE COURT:  I think this was our scheduling order,

24  sir, but that's okay.  I understand.

25        MR. BRODERICK:  It -- I, I know for sure it was Judge

1 | England's order --

2 |      THE COURT:  All right.

3 |      MR. BRODERICK:  -- but --

4 |      THE COURT:  You know what?  We're not going to argue

5 | about it.

6 |      MR. BRODERICK:  Okay.

7 |      THE COURT:  Thank you.

8 |      All right.  With that said, I'm going to put out

9 | another word that, Mr. Gonzalez, like I --

10 |      MR. GONZALEZ:  Yes.  Yes, Your Honor.

11 |      THE COURT:  Like I said, I can tell from your voice

12 | that this is a really personal, obviously, and, and very

13 | heartfelt case for you.  I was not pleased to see some of the

14 | discourse that I think has occurred between you and

15 | Mr. Broderick.  Mr. Broderick --

16 |      MR. GONZALEZ:  Thank you.

17 |      THE COURT:  This is me talking.

18 |      Mr. Broderick is a seasoned practitioner who does have

19 | a reputation for being civil and professional in dealing with

20 | other parties and in this courthouse and you may disagree with

21 | him in the course of his job.  He is a, he is a active advocate

22 | for his clients, as he should be, and his arguments he makes on

23 | behalf of his clients is his job.  It's not personal to you,

24 | even though it feels personal.

25 |      I don't want to see any more pleadings in this court

1  in this case where people, both you, Mr. Gonzalez, and

2  Mr. Broderick, frankly, for you, too, where you aren't treating

3  each other professionally and civilly.  I don't want to see

4  accusations of people dealing with each other with invective or

5  unprofessionally.  You can disagree in a professional and

6  polite fashion.  Save the passion for fighting over the merits

7  in front of a jury, if you get there.

8            So that is just my last word to both parties and

9  especially, Mr. Gonzalez, is you need to find a way to corral

10 the passion and the angst so that you can deal with

11 Mr. Broderick as civilly as you, as you can.

12           Does that make sense to you?

13           MR. GONZALEZ:  Your Honor, I've been respect --

14           THE COURT:  I'm looking for a yes or a no here.

15           MR. GONZALEZ:  Yes, but --

16           THE COURT:  Good.

17           MR. GONZALEZ:  -- you know, when we had the meet and

18 confer I take a person for their word because I believe that,

19 that that's what matters.

20           THE COURT:  If -- If --

21           MR. GONZALEZ:  And I did.

22           THE COURT:  Mr. Gonzalez, if there's a --

23           MR. GONZALEZ:  Yes.

24           THE COURT:  If there -- in this courthouse in this

25 courtroom I encourage all parties --

1          MR. GONZALEZ:  Yes.

2          THE COURT:  -- to meet and confer frequently and often

3   and try to --

4          MR. GONZALEZ:  Okay.

5          THE COURT:  -- work out scheduling and other issues

6   amongst themselves.  'Cause, frankly, you generally end up with

7   a better result.  But --

8          MR. GONZALEZ:  Yes.

9          THE COURT:  -- if you're unable to agree, there's ways

10  to present those agreements to the Court and to agree to

11  disagree with your opponent in a way that is civil and

12  professional and I'm going to expect that behavior from you

13  going forward.  You're going to be held to the same standard as

14  lawyers are in my courtroom.

15         You understand?

16         MR. GONZALEZ:  I agree.

17         THE COURT:  All right.  Thank you.

18         MR. GONZALEZ:  I agree, Your Honor, but --

19         THE COURT:  Thank you.  I don't -- thank you.

20         MR. GONZALEZ:  -- I'm --

21         THE COURT:  Mr. Gonzalez, stop while you're ahead.

22         MR. GONZALEZ:  Yes.  Okay.

23         THE COURT:  The, the Court will be taking this matter

24  under submission.

25         Thank you, both.

1          MR. BRODERICK:  Thank you and thank you for what you

2   said.

3          MR. GONZALEZ:  (Inaudible) Your Honor.

4       (Proceedings concluded at 10:40 a.m.)

5

6

7

8

9

10

11

12                          CERTIFICATE

13          I, court approved transcriber, certify that the

14   foregoing is a correct transcript from the official electronic

15   sound recording of the proceedings in the above-entitled

16   matter.

17

18   */s/ Janice Russell*                    December 4, 2018

19   Janice Russell, Transcriber                 Date

20

21

22

23

24

25